UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ETHIC INC., A DELAWARE CORPORATION, <br><br>       Plaintiff, <br><br> v. <br><br> ADMIRALS BANCORP, INC.., A RHODE ISLAND CORPORATION, AND ETHIC WEALTH ADVISORS LLC, A MASSACHUSETTS LIMITED LIABILITY COMPANY, <br><br>       Defendants. | C.A. No. 20-10581 |

## COMPLAINT

Plaintiff Ethic Inc., ("Ethic" or "Plaintiff") alleges against Admirals Bancorp Inc. ("Admirals"), and Ethic Wealth Advisors LLC ("Ethic Wealth Advisors") (collectively "Defendants"), as follows.

## INTRODUCTION

1.     For years, Ethic has carved out a distinct and recognized brand in the field of socially aware investing, under its registered trademark ETHIC.  Now, however, Admirals and its related business Ethic Wealth Advisors have elected to "re-brand" and to operate in the same space under the same mark.  Defendants' use of the same mark for the same and highly related investment services will surely confuse consumers.  Accordingly, last year the U.S. Patent and Trademark Office ("PTO") refused Admirals' attempt to register ETHIC and the confusingly similar trademark "ETHIC A WEALTH BANK."  Admirals overcame this refusal for "ETHIC A WEALTH BANK" only by misleading the PTO regarding the scope of the services to be

offered under the mark, the way Admirals and Ethic Wealth Advisors intended to use the mark, the channels of trade, and the parties' overlapping customers. Since January, Defendants have persisted in using "ETHIC" and "ETHIC, a Wealth Bank" as trademarks to identify their investment advisory and management services—willfully and with full knowledge that such conduct violates Ethic's trademark rights and that such use would lead to consumer confusion. Defendants have proceeded to use these marks regardless of what federal and state law commands, and without regard to the consumer confusion such use would generate in the marketplace. Defendants' heedless approach has forced Ethic to file this suit to protect its rights, prevent further consumer confusion, and end this damaging trademark infringement and unfair competition.

2.     This action addresses Defendants' infringement of Plaintiff's common law and federally-registered rights in the ETHIC mark for investment advisory and management services under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); Defendants' unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); Defendants' substantial, related trademark infringement under Mass. Gen. Laws ch. 110H §§§§ 12, 13, 14, and 16; and Defendants' unfair trade practices under Mass Gen. Laws ch. 93A §§ 2 and 11.

3.     Admirals was aware of Plaintiff's trademark rights and the likelihood of confusion with Plaintiff's ETHIC mark prior to the launch of its ETHIC services because Admirals filed U.S. trademark applications on March 11, 2019 for ETHIC and ETHIC A WEALTH BANK, both of which were refused in light of Plaintiff's prior federal registration for ETHIC.

4.     Despite being aware of Plaintiff's prior rights in the trademark ETHIC in connection with investment advisory and management services, Admirals nonetheless

subsequently formed its related company, Ethic Wealth Advisors LLC, registered the same with the U.S. Securities and Exchange Commission ("SEC") as an Investment Advisory Firm, and proceeded, together with Ethic Wealth Advisors LLC to launch Defendants' ETHIC wealth banking and investment advisory firm at ethicwealthbank.com.

5.      Plaintiff—and now Defendants—offer their respective services under the ETHIC mark to overlapping customers, including independent wealth managers and family offices. The identical use of ETHIC and the substantially similar "ETHIC, a Wealth Bank" trademarks for identical or highly related services to the same class of consumers, is likely to lead to confusion, cause mistakes or deceive new and existing consumers in contravention to the Lanham Act and the laws of the Commonwealth of Massachusetts. Defendants have knowingly and willfully infringed Plaintiff's senior rights in the ETHIC mark.

## THE PARTIES

6.      Ethic Inc. is a corporation organized under the laws of the State of Delaware with an address of 250 W Broadway Level 5, New York, NY 10013.

7.      Defendant Admirals Bancorp, Inc. is a corporation organized under the laws of the State of Rhode Island with an address of 579 Boylston Street Boston, MA 02116. Admirals is registered with the Federal Deposit Insurance Corporation ("FDIC") as ETHIC (FDIC #27015), and is listed with the FDIC having a "full-service brick and mortar office" at 579 Boylston Street Boston, MA.

8.      Defendant Ethic Wealth Advisors LLC is a Limited Liability Company organized under the laws of Massachusetts with an address of 125 High Street, Suite 1712 Boston, MA 02110.  Ethic Wealth Advisors LLC is registered as an investment advisory firm with the Securities and Exchange Commission ("SEC") and is shown on its Form ADV filed with the SEC

and dated December 11, 2019 as having its principal office and place of business at 125 High Street Boston, Massachusetts.

9.     On information and belief, Defendant Admirals Bancorp, Inc. and Ethic Wealth Advisors LLC are under common ownership and control.

## JURISDICTION AND VENUE

10.     This action for federal trademark infringement and unfair competition arises under the federal trademark statute (the "Lanham Act"), 15 U.S.C. §1051, *et seq.*

11.     This action further concerns claims for trademark infringement and unfair trade practices arising under Mass. Gen. Laws ch. 110H §§ 12, 13, 14, and 16, and Mass Gen. Laws ch. 93A §§ 2 and 11, respectively.

12.     This Court has original jurisdiction over the federal trademark infringement and unfair competition claims pursuant to 15 U.S.C. §§ 1114, 1121, 1125 and 28 U.S.C. §§ 1331 and 1338.

13.     This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a) because the claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

14.     This Court has personal jurisdiction over Defendant because Defendant's principal place of business is within this district.

15.     Venue properly lies in the United States District Court for the District of Massachusetts under 28 U.S.C. § 1391(b) because Defendant resides within this District.

## FACTUAL BACKGROUND

16.     Plaintiff owns U.S. Registration No. 5,412,866 for the word mark ETHIC, in connection with "investment advisory and management services, none of the foregoing related to

financial information or advisory services to health care centers and clinics" in International Class 36 (the "ETHIC Registration").  This federal trademark registration issued on February 27, 2018 and claims a date of first use anywhere at least as early as May 5, 2016 and a date of first use in interstate commerce at least as early as April 13, 2017. A true and correct copy of the registration certificate for the ETHIC Registration is attached as **Exhibit A** and incorporated by reference as though fully set forth herein.

17.     The application filing date for the ETHIC Registration is August 7, 2017, which gives Plaintiff constructive nationwide use of the ETHIC mark and priority over others for the services listed in the ETHIC Registration at least as early as that date.

18.     The ETHIC Registration is in full force and effect on the USPTO's Principal Register.

19.     Established in 2015, Ethic provides innovative and high-caliber investment services via its website at the URL address www.ethic.investments under the ETHIC mark. Ethic has succeeded in the investment field because of its top-notch reputation and its unique technology platform that allows customers to build individualized investment portfolios based on personal values, financial goals, and sustainability goals.  Ethic's platform also provides insightful financial and impact reporting on investments to allow its customers to create a portfolio of true sustainable investments. As shown on its website, Ethic provides its services to independent wealth managers, private banks, multi-family offices and institutional clients such as pension funds, endowments, and foundations.

20.     Ethic has built a substantial reputation and goodwill for its ETHIC services and has been featured in national and international business industry publications including Forbes, Business Insider, and The Telegraph.  Ethic is also backed by top-tier institutional and sustainable

investors including Fidelity Investments, a leading diversified financial services company.

21.     Ethic has devoted substantial time, effort, and resources to the development and promotion of the ETHIC mark and the services offered thereunder.  As a result of Ethic's efforts and the quality of the services offered under the ETHIC mark, consumers have come to recognize and rely upon the ETHIC mark as an indication of quality for investment services.  The ETHIC mark enjoys substantial goodwill in the relevant marketplace and is Plaintiff's valuable asset. The ETHIC mark in connection with the services claimed in the ETHIC Registration and the services detailed in paragraph 19 is hereinafter referred to as the "ETHIC Mark."

.

## DEFENDANTS' INFRINGING ACTIVITY

22.     Ethic's diligent efforts to monitor and prevent unauthorized uses of the ETHIC Mark have revealed that Defendants have engaged in willful infringement of the ETHIC Mark and the ETHIC Registration through their use of the identical trademark ETHIC and the confusingly similar trademark "ETHIC, a Wealth Bank."

23.     On information and belief, Defendants operate as related companies under common control that jointly use www.ethicwealthbank.com (the "Defendants' Website") to market and advertise Defendants' services to potential customers.  A true and correct printout of Defendants' Website as accessed on March 20, 2020 is attached as **Exhibit B** and incorporated by reference as though fully set forth herein.

24.     As part of the wealth banking and wealth management services, Defendants also specifically offer investment advisory and investment management services primarily but not exclusively to customers in Massachusetts and in interstate commerce.  For example, Defendants' LinkedIn page at the URL address  https://www.linkedin.com/company/ethicwealthbank/

identifies Defendants and advertised their services using the name ETHIC in large print, "A WEALTH BANK" in smaller print, and highlights their location in Massachusetts.  A true and correct printout of Defendants' LinkedIn profile as accessed on March 20, 2020 is attached as **Exhibit C** and incorporated by reference as though fully set forth herein.

25.     Defendants continue to offer what Admirals previously offered to customers prior to its October 1, 2019 name change, namely, "bespoke" banking services, including investment advisory services and asset management to customers in Massachusetts and beyond.  Indeed, Admirals is the owner of U.S. Trademark Registration No. 4,815,493 for the mark ADMIRALS BESPOKE BANKING, which specifically covers, among other things, "investment services, namely, asset management."

26.     Admirals registered Ethic Wealth Advisors LLC with the SEC as an investment advisory firm.  The Defendants' Website includes a website disclosure that specifically states as follows:

   ETHIC Wealth Advisors LLC ("ETHIC Wealth") is a Registered Investment Advisor ("RIA"), located in the Commonwealth of Massachusetts. ETHIC Wealth provides investment advisory and related services for clients nationally."

A copy of the website disclosures was available as of March 20, 2020 as a link on Defendants' Website, which forwarded to the following URL address: https://static1.squarespace.com/static/5d5713c5c0e34f0001c98b00/t/5e27094629859622a96780 27/1579616583446/StandardDisclosures_Ethic__20200121.pdf.

27.     The  Form ADV Part 2A – Disclosure Brochure on file with the SEC for Ethic Wealth Advisors LLC is effective as of November 8, 2019 (hereinafter the "SEC Disclosure

Brochure") and specifically outlines Ethic Wealth Advisors' investment services as follows:

> ETHIC Wealth offers investment advisory services to high net worth individuals, trusts, estates, charitable organizations, and businesses, (each referred to as a "Client")…. ETHIC Wealth provides customized investment advisory solutions for its Clients….ETHIC Wealth will then construct an investment portfolio, consisting of mutual funds and/or exchange-traded funds ("ETFs") to achieve the Client's investment goals. The Advisor may also utilize individual stocks, bonds or options contracts to meet the needs of its Clients. The Advisor may retain certain types of investments based on a Client's legacy investments based on portfolio fit and/or tax considerations.

A copy of the SEC Disclosure Brochure was available as March 20, 2020 on the SEC's website at: https://files.adviserinfo.sec.gov/IAPD/Content/Common/crd_iapd_Brochure.aspx?BRCHR_VRSN_ID=599440.

28.     Defendants' Website shows that Defendants have a "Chief Investment Officer" to facilitate social investment, an activity squarely covered by Plaintiff's rights in its registered trademark ETHIC.

29.     Defendants began identifying themselves under the infringing names ETHIC and "ETHIC, a Wealth Bank" no earlier than on or about October 1, 2019, two years after the constructive first use date of Plaintiff's ETHIC Registration and three years after Plaintiff's date of first use anywhere.  Admirals' website at https://www.admiralsbank.com/, accessed March 20, 2020, states "Effective October 1, 2019 Admirals has changed its name to ETHIC, and will be marketing itself as ETHIC, a Wealth Bank."  A true and correct copy of an October 3, 2019 news update from S&P Global Market Intelligence stating that "Admirals Bank changed its name to ETHIC, effective Oct. 1, according to the websites of the bank and the Federal Reserve's National Information Center" is attached hereto as **Exhibit D**.  Admiral's FDIC registration (FDIC #27015) likewise states that Admirals changed its name to Ethic effective October 1, 2019.  A copy of the FDIC registration was available as of March 2020 at the following URL: https://research2.fdic.gov/bankfind/.

30.     The Defendants issued a Press Release on January 21, 2020 that announced "ETHIC, a Wealth Bank" is providing "integrated banking and wealth management services" and further claimed that "ETHIC is the first of its kind in that it offers a complete platform of banking and wealth management solutions with exceptional client service supported by sophisticated yet user-friendly technology" (hereinafter the "Press Release").  A screenshot of Defendant's press release, which is attached hereto as **Exhibit E**, is shown below.



31.     As Defendants' Website and the Press Release contained herein demonstrate, Defendants use the term ETHIC as a stand-alone mark; as part of the phrase "ETHIC, a Wealth Bank"; and as shown in the logo below, with the term ETHIC prominently displayed and the phrase "A WEALTH BANK" shown in very small type.  In each instance, the dominant commercial impression given is ETHIC:



32.     Defendant Admiral was aware of the potential likelihood of confusion with Plaintiff's ETHIC at least five months before Defendants commenced use of the ETHIC and "ETHIC, a Wealth Bank" marks in commerce. As shown on the US Patent and Trademark Office's records, Admirals filed intent-to-use based applications for ETHIC (U.S. App. Serial No. 88333792) and ETHIC A WEALTH BANK (US Serial No. 88333787), on March 11, 2019 in connection with the following services:

> Financial services, namely, banking services; internet and online banking services; personal and commercial banking services; checking account services; savings account services; direct deposit services; deposit services in the nature of acceptance of deposits; safety deposit box services; financial transaction services, namely, certificates of deposit; online banking; online bill payment services; money wire transfer services; automated teller machine services; electronic funds transfer services; certified check services; providing bank account information by telephone, internet or electronic means; debit card services; consumer and commercial lending services, namely, providing, acquiring and servicing commercial and residential mortgage loans (including refinancings), construction loans, home improvement loans, car loans, home equity loans, issuing letters of credit; financial services, namely, wealth management services; consumer lending services, namely, providing, acquiring and servicing renewable energy loans; private banking services; trust services; non-investment wealth management advisory services, namely accounting, household financial management, and related data assimilation.

33.     In a pair of Office Actions dated May 30, 2019, the PTO refused registration of both of Admirals' trademark applications on the ground of likelihood of confusion with Plaintiff's ETHIC Registration, pursuant to Lanham Act Section 2(d), 15 U.S.C. §1052(d).  The PTO examiner stated in the Office Actions that a likelihood of confusion existed because Ethic's and Admirals' respective marks were confusingly similar, and the services covered by Ethic's registration and Admirals' applications were closely related.  Accordingly, the PTO determined that "a consumer is likely to have the mistaken belief that the services [offered under Ethic's mark and Admirals' mark] originate from the same source." The PTO stated in relevant part:

> Applicant's mark, ETHIC A WEALTH BANK, is confusingly similar to the registered mark, ETHIC.  Applicant has merely added matter to the registered mark and this addition does not create a distinct commercial impression between the marks.  Adding wording to

a registered mark generally does not obviate the similarity between the compared marks, as in the present case, nor does it overcome a likelihood of confusion under Section 2(d).

Regarding the relatedness of the services, the attached website evidence from third party financial institutions shows that providers of applicant's various banking and financial services also commonly provide registrant's type of investment services and the services of the parties are therefore closely related.

When confronted with closely related services bearing highly similar marks, a consumer is likely to have the mistaken belief that the services originate from the same source.  Because this likelihood of confusion exists, registration must be refused.

Admirals did not contest the PTO's refusal of its application (Serial No. 88/333,792) to register the ETHIC mark and allowed it to go abandoned.

34.     Admiral responded to the refusal issued against ETHIC A WEALTH BANK (US Serial No. 88/333,787) on November 27, 2019. However, Admirals' response conveyed a disingenuous and inaccurate picture of how the ETHIC A WEALTH BANK mark would be used and the services that would be rendered under the mark. In its response, Admirals argued confusion was not likely because there are "meaningful and significant differences between banking services and investment advisory services."  Admirals further argued the marks were distinguishable because the "ETHIC A WEALTH BANK" mark looks and sounds significantly different from Plaintiff's ETHIC mark.  This response was disingenuous and misleading given Admirals had already taken steps to offer investment services as part and parcel of its wealth banking and wealth management services and had already announced that Admirals Bank had changed its name to "ETHIC."

35.     Admirals' representation to the PTO of how the marks would be perceived does not reflect its actual use given that Admiral does not present the mark as ETHIC A WEALTH BANK with all four terms of equal size and prominence. Instead, Admirals uses its mark as "ETHIC, a Wealth Bank" or in the logo form showing the term ETHIC in much larger letters and

"A WEALTH BANK" below it in much smaller letters, thereby encouraging recognition of Defendants' business as simply ETHIC.  Similarly, Admirals' FDIC registration (FDIC #27015) identifies Admirals simply as "ETHIC."

36.     Defendants' own public filings reveal their duplicity.  Even as they were telling the PTO they would *not* be providing investment advisory services under an ETHIC mark, they were telling the SEC the opposite and preparing to provide those services. The SEC Disclosure Brochure for Ethic Wealth Advisors LLC specifically states the company would be providing "investment advisory services to high net worth individuals, trusts, estates, charitable organizations, and businesses."

37.     Both Plaintiff and Defendant Ethic Wealth Advisors LLC are registered with the SEC as investment advisory firms. A copy of Plaintiff's own registration with the SEC and the corresponding ADV Form were available as of March 20, 2020 on the SEC's website here: https://files.adviserinfo.sec.gov/IAPD/Content/Common/crd_iapd_Brochure.aspx?BRCHR_VR SN_ID=592809. There is no simpler evidence of overlap than the statements made to the SEC, which show that both Plaintiff and Defendants provide investment advisory services under the ETHIC name.

38.     The timeline of Defendants' actions shows that Admirals was attempting to lead the PTO into believing that Defendants would not offer investment advisory services under the ETHIC Mark, when that was in fact their real plan.  On October 1, 2019 Admirals Bank, with its extensive investment practice, announced its rebranding.  The SEC Disclosure Brochure, which disclosed Defendants' plan to provide investment advisory services, became effective November 8, 2019.  Days later, on November 14, 2019, Defendants organized Ethic Wealth Advisors LLC as a Massachusetts corporation that would, according to SEC Disclosure Brochure and its listing

with the SEC operate as an "investment adviser firm."  On information and belief, as of November 27, 2019, when Admirals filed its response to the Office Action in an attempt to lead the PTO to believe it would not offer investment advisory services under the ETHIC A WEALTH BANK mark, Defendants were preparing, or had already prepared, Ethic Wealth Advisors submission to the SEC showing their true intent to offer such services.

39.     Thus, Admirals misled the PTO regarding the nature of the services claimed in the application and the relation between the services covered by the ETHIC Registration and the ETHIC A WEALTH BANK application.

40.     The services that Admirals claimed in the ETHIC A WEALTH BANK application as filed and as later amended do not fully reflect the services Defendants currently offer under the "ETHIC, a Wealth Bank" or ETHIC marks.  The description of services in US Serial No. 88/333,787 was purposefully limited to make it appear as though on paper, there was no likelihood of confusion, and to hide the actual use of both the ETHIC and "ETHIC, a Wealth Bank" marks.

41.     In reality, Defendants aggressively market the very same investment advisory services that Plaintiff provides.  As shown in the "Our Team" portion of Defendants' Website attached as **Exhibit B**, Defendants have a Chief Investment Officer, Matt Morse, who Defendant specifically touted on its website for his ability to "construct investment solutions to meet [customers'] unique needs."  Defendants' description on that web page of Mr. Morse also says, "Prior to joining ETHIC, Matt was the Chief Investment Officer of the wealth management division at Eaton Vance."  Thus, Defendant, through Mr. Morse, provides the same type of expertise and investment services offered by Plaintiff.

42.     On information and belief, Defendants share one or more dual employees, and

13

Defendants engage or intend to engage in mutual referral practices, by which Admirals refers its customers to Ethic Wealth Advisors for the services that the other provides, and vice versa.

43.     On information and belief, Dimitri J. Nionakis is both Admirals' Secretary and Ethic Wealth Advisors LLC's founder and organizer.

44.     Defendants' Website also emphasizes its commitment to socially conscious investing, a clear overlap with Ethic's established business. As stated on the homepage of Defendants' Website, the term "wealth" is described as "The values you uphold. The relationships you cultivate. The experiences you share. The assets you grow. The legacy you leave behind. A wealthy life is one in which your financial health is intertwined with the health of your family, your community, and our world. Wealth is more than the sum of your assets."

45.     Ethic became aware of Defendants and their use of the ETHIC and ETHIC A WEALTH BANK marks on or about February 3, 2020 when Admirals CEO Marc A. White added Plaintiff's CEO Douglas Scott as a contact on LinkedIn.  On February 25, 2020, when the USPTO published Application Serial No. 88/333,787 for opposition, Plaintiff filed a request for an extension of time to oppose the application.

46.     The next day, on February 26, 2020 Plaintiff's counsel wrote Defendant's counsel demanding that Defendant expressly abandon Application Serial No. 88/333,787, cease all use of ETHIC as a trademark, and not use or attempt to register any trademark, domain name, or other form of intellectual property that infringes, misuses, or otherwise causes harm to Ethic's intellectual property rights.  To date, Defendants have not substantively responded to the February 26, 2020 letter and Plaintiff's demand that the Defendants cease and desist from infringing the ETHIC Mark. The Defendants have instead continued engaging in its infringing activity.

47.     Plaintiff has established itself as the senior user and registered trademark holder

of the ETHIC mark in connection with investment, investment advisory, and investment management services. Plaintiff began using the ETHIC Mark to identify its services in the ordinary course of trade, including via its website, prior to Defendants' use of or application to register the ETHIC or "ETHIC a Wealth Bank" marks.  The priority date for the ETHIC Registration is also prior to any use by Defendants of the ETHIC or "ETHIC, a Wealth Bank" marks to identify Defendants' services in the ordinary course of trade.

48.    Plaintiff's ETHIC Mark has acquired wide recognition in the financial and investment industries prior to Defendants' use of or application to register the ETHIC or "ETHIC a Wealth Bank" marks, as detailed on its website at https://ethic.investments/press.

49.    Defendants' ETHIC mark is identical to Plaintiff's ETHIC Mark. Defendants,' "ETHIC, a Wealth Bank" mark, including as used by Defendant on its website, is confusingly similar given the shared term ETHIC followed by the descriptive terms "a Wealth Bank," which do not work to distinguish the mark because as Defendants' own use shows, investment services are part and parcel of wealth management services offered to consumers. This includes, for example, family offices, which require guidance and the ability to invest in vehicles beyond the traditional investments offered by banks, such as CD's.

50.    Defendants' actions and transactions constituting unfair or deceptive acts or practices resulting from Defendants' use of the terms ETHIC or "ETHIC, a Wealth Bank" in connection with investment and banking services have occurred primarily and substantially within Massachusetts, where they are headquartered.

51.    Plaintiff is not affiliated with the Defendants.  Plaintiff has not consented to, sponsored, endorsed, or approved of Defendants' use of the terms ETHIC or "ETHIC, a Wealth Bank" in connection with investment and banking services.

52.     Defendants almost certainly knew of Plaintiff's mark through any pre-clearance investigation they performed prior to seeking to register the mark.  Even if they were somehow unaware after that process, the PTO's office action ensured Defendants were well aware of Plaintiff's mark. Defendants' actions are willful and reflect an intent to confuse consumers and profit from the goodwill and consumer recognition associated with Plaintiff and its ETHIC Mark.

### FIRST CAUSE OF ACTION

#### FEDERAL TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114

53.     Plaintiff realleges and incorporates herein by this reference paragraphs 1 through 52 of this Complaint as if fully set forth here.

54.     Plaintiff owns the inherently distinctive, strong, valid, and registered ETHIC Registration.

55.     Defendants have used and have a bona fide intent to use in commerce the ETHIC and "ETHIC, a Wealth Bank" marks, which are identical and/or confusingly similar to Plaintiff's ETHIC Mark.

56.     Without Plaintiff's consent, Defendants have used Ethic's ETHIC Mark in commerce, on their website and elsewhere, to advertise and offer Defendants' competing wealth banking, wealth management services, investment advisory and investment management services.

57.     Defendants' actions as described herein have caused and are likely to cause confusion, mistake, and deception as to the affiliation, connection, or association of Defendants with Plaintiff, as to the true source of Defendants' services, and as to the sponsorship or approval of Defendants or Defendants' services by Ethic, given both the market overlap and the similarity between Defendants' new brand and Plaintiffs' established mark.

58.     The Defendants are not affiliated or associated with Plaintiff or its services, and Plaintiff does not approve or sponsor the Defendants or Defendants' services.

59.     The actions of Defendants described above constitute trademark infringement in violation of 15 U.S.C. § 1114.

60.     Plaintiff has been, and will continue to be, actually damaged and irreparably harmed by the actions of the Defendants, which will continue unless this Court enjoins Defendants.  Plaintiff has no adequate remedy at law in that the amount of harm to Plaintiff's business and reputation and the diminution of the goodwill of the ETHIC Mark are difficult to ascertain with specificity.  Plaintiff is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

61.     Plaintiff is entitled to recover damages in an amount to be determined at trial and any profits made by the Defendants in the sale or provision of services through the use of the ETHIC and/or "ETHIC, a Wealth Bank" or "ETHIC A WEALTH BANK" marks.  Furthermore, as demonstrated by, at a minimum, Defendants' public filings and response to Plaintiffs' communications, the actions of the Defendants were undertaken willfully and with the intention of causing confusion, mistake, and deception, making this an exceptional case entitling Plaintiff to recover treble damages, reasonable attorneys' fees, and costs pursuant to 15 U.S.C. § 1117(a), as well as prejudgment interest.

## SECOND CAUSE OF ACTION

### FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125(A)

62.     Plaintiff realleges and incorporates herein by this reference paragraphs 1 through 52 of this Complaint as if fully set forth here.

63.     Plaintiff owns the inherently distinctive, strong, valid, and registered ETHIC Registration , as well as common law rights in the ETHIC mark in connection with investment, investment advisory and investment management services.

64.     Without Plaintiff's consent, Defendant marketed and rendered services in interstate commerce under the ETHIC, "ETHIC, a Wealth Bank" and "ETHIC A WEALTH BANK" marks, which are highly similar, if not identical, to the ETHIC Mark.

65.     Defendants' actions as described herein have caused and are likely to cause confusion, mistake, and deception among ordinary consumers as to the affiliation, connection, or association of Defendants with Plaintiff, as to the true source of Defendants' services, and as to the sponsorship or approval of the Defendant or Defendants' services by Plaintiff.

66.     Defendants' actions constitute unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a)(1).

67.     Plaintiff has been, and will continue to be, damaged and irreparably harmed by the actions of the Defendants, which will continue unless the Court enjoins Defendants from their infringement of Plaintiff's ETHIC Mark.  Plaintiff has no adequate remedy at law in that the amount of harm to Plaintiff's business and reputation and the diminution of the goodwill of Plaintiff's trademarks is difficult to ascertain with specificity.  Plaintiff is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

68.     Plaintiff is entitled to recover damages in an amount to be determined at trial and

any profits made by Defendant in the sale or provision of services through the use of the ETHIC,

"ETHIC, a Wealth Bank" and/or ETHIC A WEALTH BANK marks.

## **THIRD CAUSE OF ACTION**

### USE OF AN IMITATION MARK AND TRADEMARK INFRINGEMENT UNDER MASS. GEN. LAWS CH. 110H §§ 12, 13, 14, AND 16

69.     Plaintiff realleges and incorporates herein by this reference paragraphs 1 through 52 of this Complaint as if fully set forth here.

70.     Plaintiff owns the inherently distinctive, strong, valid, and registered ETHIC Registration, as well as common law rights in the ETHIC Mark.

71.     Defendant has used and has a bona fide intent to use in commerce the ETHIC, "ETHIC, a Wealth Bank," and ETHIC A WEALTH BANK marks, which are identical and/or highly similar to the ETHIC Mark.

72.     Without Plaintiff's consent, the Defendants used Plaintiff's ETHIC mark in commerce to advertise and offer the Defendants' competing wealth banking, wealth management services, investment advisory and investment management services.

73.     The Defendants' actions as described herein have caused and are likely to cause confusion, mistake, and deception as to the affiliation, connection, or association of Defendant with Plaintiff, as to the true source of Defendants' services, and as to the sponsorship or approval of Defendant or Defendants' services by Plaintiff.

74.     Defendant is not affiliated or associated with Plaintiff or its services, and Plaintiff does not approve or sponsor the Defendant or Defendants' services.

75.     The actions of the Defendants described above constitute use of an imitation trademark and trademark infringement in violation of Mass. Gen. Laws ch. 110H §§ 12, 14, and 16.

76.     Plaintiff has been, and will continue to be, damaged and irreparably harmed by the actions of the Defendants, which will continue unless the court enjoins Defendants from their infringement of Plaintiff's ETHIC Mark.  Plaintiff has no adequate remedy at law in that the amount of harm to Plaintiff's business and reputation and the diminution of the goodwill of the ETHIC Mark are difficult to ascertain with specificity.  Plaintiff is therefore entitled to injunctive relief pursuant to Mass. Gen. Laws ch. 110H §§ 13 and 14.

77.     Defendants acted willfully and intentionally to cause confusion, mistake, and deception.  Plaintiff therefore is entitled to recover damages in an amount to be determined at trial and any profits made by Defendant in the sale or provision of services through the use of the ETHIC, "ETHIC, a Wealth Bank" and/or ETHIC A WEALTH BANK marks pursuant to Mass. Gen. Laws ch. 110H §§§ 12, 14, and 16.

### FOURTH CAUSE OF ACTION

#### UNFAIR TRADE PRACTICES UNDER MASS GEN. LAWS CH. 93A §§ 2 AND 11

78.     Plaintiff realleges and incorporates herein by this reference paragraphs 1 through 52 of this Complaint as if fully set forth here.

79.     Plaintiff owns and uses in trade or commerce the inherently distinctive, strong, valid, and registered ETHIC Registration, as well as common law rights in the ETHIC mark in connection with investment, investment advisory and investment management services.

80.     Without Plaintiff's consent, Defendant marketed and sold services in trade or commerce under the ETHIC, "ETHIC, a Wealth Bank" and ETHIC A WEALTH BANK marks, which are highly similar, if not identical, to Plaintiff's ETHIC Mark.

81.     Without Plaintiff's consent, Defendant used Plaintiff's ETHIC mark in trade or commerce to advertise and offer Defendants' competing wealth banking, wealth management services, investment advisory and investment management services.

82.     Defendants' use of Plaintiff's ETHIC Mark in trade or commerce, and such transactions and actions associated therewith, occurred primarily and substantially, though not exclusively, within the Commonwealth of Massachusetts.

83.     Defendants' actions as described herein have caused and are likely to cause confusion, mistake, and deception as to the affiliation, connection, or association of Defendant with Plaintiff, as to the true source of Defendants' services, and as to the sponsorship or approval of the Defendants or Defendants' services by Plaintiff.

84.     Defendants are not affiliated or associated with Plaintiff or its services, and Plaintiff does not approve or sponsor the Defendants or Defendants' services.

85.     Defendants' conduct is unfair as it violates established common-law and statutory laws regarding trademark infringement and is immoral, unethical, oppressive, and unscrupulous. But infringing the mark, confusing and diverting customers, and harming Ethic's carefully cultivated goodwill, Defendants have substantially injured Plaintiff.

86.     The actions of the Defendants described above constitute unfair trade practices in violation of Mass Gen. Laws ch. 93A §§ 2 and 11.

87.     Plaintiff has been, and will continue to be, damaged and irreparably harmed by the actions of the Defendants, which will continue unless the court enjoins Defendants from their infringement of Plaintiff's ETHIC Mark.  Plaintiff has no adequate remedy at law in that the amount of harm to Plaintiff's business and reputation and the diminution of the goodwill of the ETHIC Mark are difficult to ascertain with specificity.  Plaintiff is therefore entitled to injunctive relief pursuant to Mass Gen. Laws ch. 93A § 11.

88.     Plaintiff is entitled to recover damages in an amount to be determined at trial resulting from use by the Defendants in the sale or provision of services through the use of the

ETHIC. "ETHIC, a Wealth Bank," and/or ETHIC A WEALTH BANK marks.  Furthermore, Defendants acted willfully and intentionally to cause confusion, mistake, and deception, making this an exceptional case entitling Plaintiff to recover double or treble damages, reasonable attorneys' fees, and costs pursuant to Mass Gen. Laws ch. 93A § 11.

## FIFTH CAUSE OF ACTION

### UNFAIR COMPETITION IN VIOLATION OF THE COMMON LAW

89.    Ethic realleges and incorporates herein by this reference paragraphs 1 through 52 of this Complaint as if fully set forth here.

90.    Defendant's unfair competition, including acts of infringement and replication of the likeness and appearance of Plaintiff's mark, as alleged herein, violate its state common law duty not to engage in unfair competition in the Commonwealth of Massachusetts.

91.    Defendant's actions were willful and intentional and have caused Plaintiff irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A      That Plaintiff be granted preliminary and permanent injunctive relief under 15 U.S.C. § 1051, *et seq.*; specifically, that the Defendants and all of their respective officers, agents, servants, representatives, employees, attorneys, parent and subsidiary corporations, assigns and successors in interest, and all other persons acting in concert with it be preliminarily and permanently enjoined from (i) using the ETHIC , "ETHIC, a Wealth Bank," and the  ETHIC A WEALTH BANK marks, and Ethic trade name, or any other mark or name confusingly similar to the ETHIC Mark, in connection with the marketing, promotion, advertising, sale, or distribution of any products and services and (ii) from any acts of infringement of the ETHIC Mark.

B.      That Plaintiff be granted preliminary and permanent injunctive relief under Mass. Gen. Laws ch. 110H §§ 13 and 14; specifically, that the Defendants and all of their respective officers, agents, servants, representatives, employees, attorneys, parent and subsidiary corporations, assigns and successors in interest, and all other persons acting in concert with it be preliminary and permanently enjoined from (i) using the ETHIC , the "ETHIC, a Wealth BanK' and ETHIC A WEALTH BANK marks, and Ethic trade name, or any other mark or name confusingly similar to the ETHIC Mark, in connection with the marketing, promotion, advertising, sale, or distribution of any products and services and (ii) from any acts of infringement of the ETHIC Mark.

C.      That Plaintiff be granted preliminary and permanent injunctive relief under Mass Gen. Laws ch. 93A § 11; specifically, that the Defendants and all of their respective officers, agents, servants, representatives, employees, attorneys, parent and subsidiary corporations, assigns and successors in interest, and all other persons acting in concert with it be permanently enjoined from (i) using the ETHIC, the "ETHIC, a Wealth Bank," and ETHIC A WEALTH BANK marks, and Ethic trade name, or any other mark or name confusingly similar to the ETHIC Mark, in connection with the marketing, promotion, advertising, sale, or distribution of any products and services and (ii) from any acts of infringement of the ETHIC Mark.

D.      That the Defendants are ordered to file, within ten (10) days from entry of an injunction, a declaration with this Court signed under penalty of perjury certifying the manner in which the Defendants have complied with the terms of the injunction;

E.      That the Defendants are adjudged to have violated 15 U.S.C. § 1114 by infringing the ETHIC Mark;

F.      That the Defendants are adjudged to have violated 15 U.S.C. § 1125(a) for unfairly

competing against Ethic by using a false designation of origin for Defendant's infringing services;

G.      That the Defendants are adjudged to have violated Mass. Gen. Laws ch. 110H §§§§ 12, 13, 14, and 16 for use of an imitation mark and by infringing the ETHIC Mark;

H.      That the Defendants are adjudged to have violated Mass Gen. Laws ch. 93A §§ 2 and 11 for unfair trade practices against Plaintiff by using a false designation of origin for Defendants' infringing services;

I.      That Plaintiff be awarded Defendants' profits derived by reason of said acts, or as determined by said accounting;

J.      That Plaintiff be awarded three times Defendants' profits and three times of all Plaintiff's damages, suffered as a result of Defendants' willful, intentional, and deliberate acts in violation of the Lanham Act, as well as Plaintiff's costs, attorneys' fees, and expenses in this suit under 15 U.S.C. § 1117;

K.      That Plaintiff be awarded all Defendant's profits resulting from Defendants' use of the ETHIC, "ETHIC, a Wealth Bank" and/or ETHIC A WEALTH BANK marks, and that Plaintiff be awarded double or treble of Plaintiff's damages, suffered as a result of Defendants' willful, intention, and deliberate acts, as well as Plaintiff's costs and attorneys' fees pursuant to Mass. Gen. Laws ch. 110H §§ 12 and 14.

L.      That Plaintiff be awarded double or treble damages, suffered as a result of Defendants' willful, intention, and deliberate acts, as well as Plaintiff's costs and attorneys' fees under Mass Gen. Laws ch. 93A § 11.

M.      That Plaintiff be awarded punitive damages pursuant to Plaintiffs' common law claims.

N.      That Plaintiff be granted prejudgment and post judgment interest;

O.      That Plaintiff be granted costs associated with the prosecution of this action; and

P.      That Plaintiff be granted such further relief as the Court may deem just and equitable.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby respectfully demands a trial by jury of all issues triable of right by a jury.

Dated:  March 24, 2020                    Respectfully submitted,


  */s/ Adam S. Gershenson_____*
Adam S. Gershenson (BBO #671296)
COOLEY LLP
500 Boylston Street
Boston, MA 02116
Telephone:      (617) 937-2300
Facsimile:      (617) 937-2400
agershenson@cooley.com

John W. Crittenden
State Bar of California No. 101634
(Motion for *Pro Hac Vice* to be filed)
101 California Street, 5th Floor
San Francisco, CA 94111
Telephone:      (415) 693-2000
jcrittenden@cooley.com

*Counsel for Ethic Inc.*


222248283

25